**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

**FILED**
IN CLERK'S OFFICE
U S DISTRICT COURT E.D.N.Y.

★ **MAY 1 6 2011** ★

-------------------------------------------------------X

MONIKA AKKA and LEELA KUMARI,

               Plaintiffs,

v.

DHANBIR SALUJA, HARJIT "POTEE"
SALUJA, and MOHINI SINGH,

               Defendants.

-------------------------------------------------------X

**BROOKLYN OFFICE**

**COMPLAINT**

**CV 11 - 2365**

**BIANCO, J.**    WALL, M.J.

Plaintiffs, by their counsel, The Legal Aid Society and Cleary Gottlieb Steen & Hamilton

LLP, based on personal knowledge as to themselves and upon information and belief as to all

other matters, allege as follows:

## NATURE OF THE ACTION

1.     This is an action for damages and declaratory relief brought by Monika Akka ("Ms.

Akka") and Leela Kumari ("Ms. Kumari", and together, "Plaintiffs") who were

trafficked into the United States and held in the United States for involuntary labor by

Harjit Saluja a/k/a Potee Saluja ("Mrs. Saluja"), Dr. Dhanbir Saluja ("Dr. Saluja"),

and/or Mohini Singh ("Mrs. Singh", and collectively, "Defendants").   Human

trafficking includes the recruitment, transportation, harboring, provision, or obtaining

of a person through the use of force, fraud, or coercion for the purpose of subjection

to servitude, peonage, debt bondage, or slavery.

2.     Defendants deceived Plaintiffs into coming to the United States by promises of decent

wages and working conditions.   Defendants, however, forced Plaintiffs to work

oppressive hours for less than the minimum and prevailing wages and controlled

every aspect of their lives.  Defendants cut off Plaintiffs' access to the outside world, forcing them to work under isolating, illegal and intolerable conditions for years. Defendants also confiscated Plaintiffs' travel documents and threatened Plaintiffs with arrest by police for failure to possess documentation of immigrant status to deter Plaintiffs from leaving or reporting Plaintiffs' condition to authorities.

## JURISDICTION AND VENUE

3.      This Court has subject matter jurisdiction over Plaintiffs' federal claims pursuant to 28 U.S.C. § 1331, 29 U.S.C. § 201 *et seq.*, and 18 U.S.C. § 1595(a).

4.      This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367(a) because these claims are so closely related to Plaintiffs' federal claims that they form parts of the same case or controversy under Article III of the United States Constitution.

5.      This Court has authority to grant the declaratory relief requested under 28 U.S.C. § 2201.

6.      Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this district, and Defendants reside in this district.

## PARTIES

7.      At all times relevant to this action, Plaintiff Monika Akka was employed by Defendants, residing in the State of New York.

8.      Ms. Akka currently resides in Brooklyn, New York.

9.      At all times relevant to this action, Plaintiff Leela Kumari was employed by Defendants, residing in the State of New York.

10.     Ms. Kumari currently resides in Jersey City, New Jersey.

2

11.   At all times relevant to this action, Defendant Dr. Dhanbir Saluja resided in Roslyn, New York and, upon information and belief, still resides at the same address.

12.   At all times relevant to this action, Defendant Harjit Saluja a/k/a Potee Saluja resided in Roslyn, New York and, upon information and belief, still resides at the same address.

13.   At certain times relevant to this action, Defendant Mohini Singh resided in Roslyn, New York and, upon information and belief, still resides at the same address when she is in the United States.

## STATEMENT OF FACTS

### *Ms. Akka's Recruitment and Transportation*

14.   Ms. Akka was born in Bhutan but moved to Bihar, India when she was nine years old.

15.   In or about Winter 1999, Ms. Akka met Mrs. Saluja in India.  Mrs. Saluja recruited Ms. Akka to do household work for her family in the United States.  Mrs. Saluja offered 6,000 rupees (approximately U.S. $150) per month and stated that the job would entail cooking, cleaning, ironing, and other household work.  Mrs. Saluja told Ms. Akka that while in her employ, Ms. Akka could go to church every other Sunday.

16.   Mrs. Saluja and her family members then arranged for Ms. Akka's visa and plane tickets, requiring possession of Ms. Akka's passport to do so.  Ms. Akka signed several papers written in English to apply for a visa.  The papers were not explained or translated for Ms. Akka, who at the time could not speak, read, or write in English.

17.   In or about Winter 1999, Ms. Akka was escorted to the U.S. Embassy with, upon information and belief, a driver from the Indian Navy.

18.   On or about February 23, 1999, Ms. Akka departed for the United States with Mrs. Singh.  Ms. Akka traveled to the airport in, upon information and belief, a naval car

accompanied by Mrs. Singh and Madanjit Singh a/k/a "Bobbi," who is Mrs. Singh's son and Mrs. Saluja's brother. Upon information and belief, Madanjit Singh is a naval officer.

19. Ms. Akka did not hold either her plane ticket or her passport – Mrs. Singh kept them both. Ms. Akka was instructed to tell any immigration officer that she would return to India in six months.

20. Upon Ms. Akka's arrival, Mrs. Saluja obtained Ms. Akka's passport and visa from Mrs. Singh. Defendants never permitted Ms. Akka to retain possession of her passport and visa.

### *Ms. Kumari's Recruitment and Transportation*

21. Ms. Kumari is a native citizen of India. She resided in New Delhi, India prior to working for Defendants.

22. In or about January 2005, Ms. Kumari met Mrs. Singh. Mrs. Singh recruited Ms. Kumari to do household work for her daughter, Mrs. Saluja, and her family in the United States, for a term of five (5) years for 12,000 rupees (approximately US $300) per month. Mrs. Singh instructed Ms. Kumari to bring Mrs. Singh her passport.

23. Mrs. Singh and her family members then arranged for Ms. Kumari's visa and plane tickets, requiring possession of Ms. Kumari's passport to do so.

24. Ms. Kumari took her son to her sister's home in Kerala, India and left him there for her sister to raise him while Ms. Kumari was abroad.

25. Ms. Kumari was required to travel to Mumbai by Mrs. Singh to obtain a visa. For approximately 3 months, Ms. Kumari was instructed to stay at the Indian navy base in which Madanjit Singh was stationed as a naval officer.

4

26. Upon information and belief, on behalf of Mrs. Singh and Mrs. Saluja, Madanjit Singh facilitated the procuring of Ms. Kumari's visa to come to the U.S.

27. At the navy base, Ms. Kumari was given papers to sign for her visa application. The papers were in English and she was not given time to read them before signing them and they were not translated for her. Ms. Kumari is not fluent in English.

28. Upon information and belief, these papers included a contract that described the hours she would work, the amount of wages she would be paid, and stated that Ms. Kumari was going to the U.S. with Mrs. Singh and would come back with her.

29. Upon information and belief, staff of Madanjit Singh took Ms. Kumari to the U.S. Embassy for her visa interview.

30. On or about August 7, 2005, Ms. Kumari traveled to the United States with Mrs. Singh. Ms. Kumari did not hold either her passport or her plane ticket. Mrs. Singh kept Ms. Kumari's passport. When Ms. Kumari arrived in the United States she traveled to Mrs. Saluja's home with Mrs. Singh.

31. Upon Ms. Kumari's arrival, Mrs. Saluja obtained Ms. Kumari's passport and visa from Mrs. Singh. While Ms. Kumari remained in Defendants' employ, Defendants never permitted her to retain possession of her passport and visa.

### *Plaintiffs' Employment Conditions*

32. Ms. Akka served primarily as Defendants' domestic worker and grounds maintenance worker from on or about February 24, 1999 until on or about June 1, 2008.

33. Ms. Kumari served primarily as Defendants' domestic worker and grounds maintenance worker from on or about August 7, 2005 until on or about June 1, 2008.

34. At all times relevant to this action, Ms. Akka and Ms. Kumari worked in Defendants' home located in Roslyn, New York.

5

35.     Ms. Akka and Ms. Kumari also assisted Mrs. Saluja's real estate activities outside of Defendants' home by providing cleaning services, promotional services such as distributing flyers, some clerical services, and other services.

36.     During all times relevant to this action, Ms. Akka and Ms. Kumari resided with Dr. and Mrs. Saluja, and resided with Mrs. Singh, when she was in the United States.

37.     Ms. Akka and Ms. Kumari also resided with Dr. and Mrs. Saluja's daughters, Roshni Saluja ("Roshni") and Reina Saluja ("Reina") who resided with Defendants at various times throughout Ms. Akka's and Ms. Kumari's term of employment with Defendants.

38.     At all relevant times to this action, Defendants had the power to hire Ms. Akka and Ms. Kumari.

39.     At all relevant times to this action, Defendants had the power to fire Ms. Akka and Ms. Kumari.

40.     At all relevant times to this action, Defendants had the power to set the schedule of Ms. Akka and Ms. Kumari.

41.     At all relevant times to this action, Defendants had the power to supervise Ms. Akka and Ms. Kumari.

42.     At all relevant times to this action, Defendants had the power to control the work conditions in the household.

43.     At all relevant times to this action, Defendants had the power to determine the rate and method of payment of Ms. Akka's and Ms. Kumari's wages.

44.     At all relevant times to this action, Defendants were employers of Ms. Akka and Ms. Kumari as defined under the employment laws as Defendants acted directly or

indirectly in the interest of an employer in relation to their employees. 29 U.S.C. § 203(d); New York Labor Law § 190.

45. At all relevant times to this action, Defendants employed Ms. Akka and Ms. Kumari as defined under the employment laws as Defendants suffered or permitted Ms. Akka and Ms. Kumari to work. 29 U.S.C. § 203(g); New York Labor Law § 190.

### *Plaintiffs' Duties and Hours*

46. Beginning on or about February 24, 1999 for Ms. Akka and August 7, 2005 for Ms. Kumari, until on or about May 31, 2008, Defendants required Plaintiffs to work seven days a week between approximately 6:00 a.m. and 11:00 p.m. every day.

47. Ms. Akka and Ms. Kumari's work responsibilities included housekeeping, cooking, grounds maintenance, residential cleaning services in unoccupied homes, some clerical tasks and personal services.

48. Generally, in each week of work Ms. Akka and Ms. Kumari performed some non-domestic services, including, inter alia, assisting construction workers, landscaping, outside cleaning services, catering, and clerical tasks.

49. During a large part of each day, Ms. Akka and Ms. Kumari were required to perform all of the housekeeping duties for Defendants' large multistoried home. These duties included, but were not limited to, vacuuming, dusting, sweeping, mopping, cooking and serving meals, cleaning the kitchen, washing dishes, cleaning doors and windows, cleaning bedrooms and bathrooms, ironing, and washing laundry for both Mr. and Mrs. Saluja's household and later Reina's household. Defendants also required Ms. Akka and Ms. Kumari to walk and bathe Defendants' dogs and wash Defendants' three cars.

50.   Additionally, Defendants required Ms. Akka and Ms. Kumari to perform laborious tasks to maintain the grounds around the Defendants' home, including shoveling snow, cleaning the gutters on the roof of Defendants' house, and cleaning the sewage and drainage systems of the Defendants' home.

51.   Defendants further required Ms. Akka and Ms. Kumari to do landscaping in Defendants' yard, including gardening, pruning trees, raking leaves, and mowing the lawn, despite the fact that Defendants were aware that Ms. Akka had asthma and became ill when she worked in the garden.

52.   With regard to Ms. Akka and Ms. Kumari's cooking duties, Defendants generally required Ms. Akka and Ms. Kumari to prepare complete home-cooked meals, both at regularly scheduled times and upon request, for Defendants, Reina and Roshni, and guests.

53.   Defendants generally required Ms. Akka and Ms. Kumari to prepare meals in an unheated kitchen in their garage, regardless of the weather conditions, instead of in the Defendants' indoor kitchen.

54.   Approximately twice every month, Defendants hosted parties at their home. On these days, Ms. Akka and Ms. Kumari were required to work even longer hours, from about 6:00 a.m. until 2:00 a.m. on the following mornings, and perform additional tasks. These tasks included, but were not limited to, preparing and serving food and drink to the persons attending the parties and collecting and cleaning dishes.

55.   In or about Summer 2006, Defendants renovated their home and the entryway to the home and required Ms. Akka and Ms. Kumari to assist with the renovation. The tasks Ms. Akka and Ms. Kumari performed included, but were not limited to, manually

carrying heavy pieces of marble outside, assisting construction workers with laying marble, carrying glass cupboard doors out of the house, and gathering roof shingles for garbage collection.  As a result of this strenuous work, Ms. Kumari injured her leg and back, but Defendants did not offer to take her to the hospital and demanded that she continue to perform the tasks Defendants required.

56.     Ms. Akka and Ms. Kumari regularly provided Defendants and Defendants' guests on-call personal services, including making their beds in the morning, serving meals in bed, and turning down their beds at night.

57.     Mrs. Saluja required Ms. Akka and Ms. Kumari to perform additional special services, including almost daily hand, leg and foot massages and weekly full body massages.

58.     Upon information and belief, Mrs. Saluja obtained a real estate certification in or around 2004.  Beginning in or about 2005, Mrs. Saluja required Ms. Akka and Ms. Kumari to perform various duties in connection with her real estate business.  These duties included, but were not limited to, distributing advertisements for the business, cleaning the homes Mrs. Saluja aimed to sell, and planting flowers in the gardens outside the homes for sale.

59.     When Mrs. Saluja travelled to India on occasion, Defendants would require Ms. Akka and Ms. Kumari to complete arduous tasks in addition to their daily duties, including cleaning mold in the Defendants' basement.

60.     Defendants required that Ms. Akka and Ms. Kumari stand in the kitchen while Defendants and their children ate so that Ms. Akka and Ms. Kumari could get them

additional food or drink without delay. Mrs. Saluja also required that Ms. Akka and Ms. Kumari cook and reheat food using a stove, rather than a microwave.

61. Ms. Akka and Ms. Kumari were only rarely allowed free time and were able to take only short breaks, generally less than 20 minutes, for meals. Whenever their ordinary duties were complete, Defendants required that they perform additional tasks such as polishing silverware and washing Defendants' cars.

62. Ms. Akka and Ms. Kumari were constantly on-call at all hours of the day and night for Defendants' requests or orders.

### *Plaintiffs' Wages*

63. Defendants paid Ms. Akka and Ms. Kumari only once or twice per year.

64. Generally, Dr. Saluja wrote checks to Ms. Akka and Ms. Kumari. The checks were sent to their families in India or delivered to their family when members of the Saluja family or their friends traveled to India.

65. Defendants' payments for Ms. Akka ranged from approximately $1000 to approximately $3500 between 2000 and 2003, and ranged from approximately $1000 to approximately $7500 between 2004 and 2007. Ms. Akka believes she was paid approximately $2000 per year at the outset of her employment, and that she received periodic raises until she was paid approximately $7000 per year towards the end of her employment with Defendants.

66. Upon information and belief, Ms. Akka's wages were not paid in correspondence to her hours worked.

67. Defendants' payments for Ms. Kumari ranged from approximately $800 and approximately $1600 between 2006 and 2007. Ms. Kumari believes she was paid

approximately $3600 per year during the period of her employment with the Defendants.

68. Upon information and belief, Ms. Kumari's wages were not paid in correspondence to her hours worked.

69. Defendants have not paid Ms. Akka or Ms. Kumari any wages at all for at least the last six months of their employment with Defendants.

70. Ms. Kumari and Ms. Akka had little access to other sources of money, aside from occasional small tips from guests or from Mrs. Saluja in connection with their work cleaning houses for her real estate business or when providing personal services to the visiting guests staying at Defendants' home.

71. At all relevant times to this action, Defendants did not pay Ms. Akka and Ms. Kumari the proper federal minimum wage for all of the hours each worked for Defendants, or overtime pay for the hours over forty (40) hours per week each worked for Defendants.

72. At all relevant times to this action, Defendants did not pay Ms. Akka and Ms. Kumari the proper New York State minimum wage for all of the hours each worked for Defendants or overtime pay for the hours over forty (40) hours per week each worked for Defendants.

73. At all relevant times to this action, Defendants did not pay Ms. Akka and Ms. Kumari spread of hours pay as required under New York state law: an additional hour of pay for those days in which the interval between the time Ms. Akka and Ms. Kumari each started and ended work was more than ten hours.

74.     Defendants willfully and/or intentionally did not pay Ms. Akka and Ms. Kumari their lawful wages.

### Defendants' Deception as to Plaintiffs' Rights

75.     Defendants instructed Ms. Akka and Ms. Kumari not to tell anyone how much they were paid.

76.     Defendants did not inform Ms. Akka and Ms. Kumari about the minimum wage or overtime rate.

77.     Defendants did not maintain proper records for Ms. Akka and Ms. Kumari's work schedules and pay, or provide either Ms. Akka or Ms. Kumari with wage statements as required by both state and federal law.

78.     At all relevant times to this action, Defendants did not post any information indicating the laws regarding the minimum wage and overtime pay, or otherwise provide Ms. Akka and Ms. Kumari any information about their rights under the federal or state employment laws.

79.     Defendants' failure to inform Plaintiffs about their rights was willful and/or intentional.

80.     Defendants' violations of the employment laws, and other acts and omissions, prevented Ms. Akka and Ms. Kumari from knowing their basic rights under the state and federal laws, preventing them from bringing this action at an earlier juncture.

81.     Upon information and belief, Defendants sought to deceive Ms. Akka and Ms. Kumari into believing that they had no legal recourse against Defendants and no legal rights in the United States.

82.     Ms. Akka and Ms. Kumari did not acquire full and actual knowledge of their rights and remedies until more than two years after they fled Defendants' house.

83.   Ms. Akka and Ms. Kumari exercised reasonable diligence in bringing this action.

*Isolation, Abuse of Process, and Psychological Coercion*

84.   During all relevant times, Defendants severely restricted Ms. Akka and Ms. Kumari's movements inside and outside of the Defendants' home, preventing them from leaving the home unaccompanied or without permission.

85.   Defendants did not orient Ms. Akka and Ms. Kumari to the surrounding neighborhood around the Defendants' home. Ms. Akka and Ms. Kumari did not have driver's licenses or vehicles. Defendants did not show Ms. Akka and Ms. Kumari where to locate or how to use public transportation.

86.   Defendants warned Ms. Akka and Ms. Kumari that if police officers encountered them, they would arrest Ms. Akka and Ms. Kumari for not having legal papers documenting their immigrant status.

87.   Defendants only allowed Ms. Akka and Ms. Kumari to attend church infrequently.

88.   Defendants told Ms. Akka and Ms. Kumari not to talk to anyone. In particular, Mrs. Saluja warned Ms. Akka and Ms. Kumari never to discuss anything about the Defendants' household, including the amount of their pay.

89.   Mrs. Saluja instructed Ms. Akka and Ms. Kumari to never open the door to the home unless they knew the person and Mrs. Saluja was home.

90.   Neither Ms. Akka nor Ms. Kumari had a bank account in the United States. Mrs. Saluja told them they could not have a bank account because of their immigration status.

91.   Defendants never took Ms. Akka and Ms. Kumari to see a doctor or dentist. Dr. Saluja did not offer them preventive care even though he is a physician.

92.     Defendants promised Ms. Akka and Ms. Kumari that Defendants would help them adjust their status but never did so.

### *Plaintiffs' Escape*

93.     Ms. Kumari and Ms. Akka ran away together from Defendants' home on or about June 1, 2008.

94.     After Ms. Kumari escaped, she requested the return of her passport.  Ms. Kumari learned that Defendants had placed her passport at a bank.  Mrs. Saluja directed Ms. Kumari to quickly sign papers, which were in English, to obtain the passport.  Ms. Kumari was not given an opportunity to read the paper or consult with anyone about the document, and no one explained the legal terms in the document to her.  Ms. Kumari signed the paperwork and obtained her passport.  She later learned that one of the papers purported to be a release of claims.

95.     Despite repeated requests from Ms. Akka in the months and years following her escape, Mrs. Saluja never returned Ms. Akka's passport.

## FIRST CLAIM FOR RELIEF

### Forced Labor

(18 U.S.C. §§ 1589, 1590, 1592, 1595)

96.     Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

97.     Plaintiffs are authorized to bring these civil claims against Defendants pursuant to the civil remedies provision of the Trafficking Victims Protection Reauthorization Act. 18 U.S.C. § 1595.

98.     Defendants knowingly obtained the labor and/or services of Plaintiffs by means of a scheme, pattern, or plan intended to cause Plaintiffs to believe that, if they did not

perform such labor or services, Plaintiffs and/or their families would suffer serious harm or physical restraint.

99. Defendants knowingly obtained the labor and/or services of Plaintiffs by improper means, including by holding their passports and through abuse and/or threatened abuse of law or legal process.

100. Defendants acted with reckless or callous indifference to Plaintiffs' federally protected rights and/or otherwise engaged in outrageous conduct.

101. Defendants' knowing and intentional acts constitute a violation of 18 U.S.C. § 1589, 1590, 1592, and 1595.

102. Plaintiffs suffered injuries as a result of these actions.

103. Plaintiffs are entitled to an award of compensatory and punitive damages, attorneys' fees, and costs.

## SECOND CLAIM FOR RELIEF

### Trafficking with Respect to Slavery, Involuntary Servitude, or Forced Labor

(18 U.S.C. §§ 1590, 1592, 1595)

104. Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

105. Plaintiffs are authorized to bring these civil claims against Defendants pursuant to the civil remedies provision of the Trafficking Victims Protection Reauthorization Act. 18 U.S.C. § 1595.

106. Defendants knowingly recruited, harbored, transported, provided and obtained Plaintiffs by holding their passports and by fraud or deception for labor and services for the purpose of subjecting them to involuntary servitude, forced labor and/or slavery.

15

107.   Defendants acted with reckless or callous indifference to Plaintiffs' federally protected rights and/or otherwise engaged in outrageous conduct.

108.   Defendants' knowing and intentional acts constitute a violation of 18 U.S.C. § 1590, 1592, and 1595.

109.   Plaintiffs suffered injuries as a result of these actions.

110.   Plaintiffs are entitled to an award of compensatory and punitive damages, attorneys' fees, and costs.

### THIRD CLAIM FOR RELIEF

### Slavery and Involuntary Servitude

(U.S. Const. Amend. XIII, 18 U.S.C. § 1584)

111.   Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

112.   Defendants knowingly and willfully held Plaintiffs in involuntary servitude, in violation of 18 U.S.C. § 1584, which incorporates the Thirteenth Amendment's bar on slavery and involuntary servitude.

113.   Defendants knowingly and willfully brought Plaintiffs to the U.S. to be held in a condition of involuntary servitude, in violation of 18 U.S.C. § 1584, which incorporates the Thirteenth Amendment's bar on slavery and involuntary servitude.

114.   Defendants knowingly and willfully forced Plaintiffs to perform uncompensated work and cut off Plaintiffs' access to the outside world.

115.   Defendants acted with reckless or callous indifference to Plaintiffs' federally protected rights and/or otherwise engaged in outrageous conduct.

116.   Defendants' knowing and intentional acts constitute a violation of 18 U.S.C. § 1584.

117.   Plaintiffs suffered injuries as a result of these actions.

118.   Plaintiffs are entitled to an award of compensatory and punitive damages, attorneys' fees, and costs.

### FOURTH CLAIM FOR RELIEF

### Federal Labor Standards Act (FLSA) Minimum Wage Violation

(29 U.S.C. § 201, *et seq.*)

119.   Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

120.   Because Plaintiffs were employed as domestic workers in a household at times relevant to this action, Plaintiffs were engaged in commerce within the meaning of the FLSA, 29 U.S.C. § 202(a).

121.   Section 6(a) of the FLSA, 29 U.S.C. § 206(a), provides that any employee engaged in commerce shall be paid wages at a specific rate during the period of each Plaintiff's employment.

122.   In all periods of each Plaintiff's employment, Defendants knowingly paid each Plaintiff an hourly rate far less than the federal minimum wage, in violation of 29 U.S.C. §§ 206 and 216.

123.   Defendants' willful and intentional failure to pay each Plaintiff the minimum wage violates 29 U.S.C. § 201, et seq. and U.S. Department of Labor regulations.

124.   Defendants did not act in good faith when they failed to comply with federal minimum wage law.

125.   Each Plaintiff is entitled to an award of damages for unpaid minimum wages in amounts equal to the proper federal minimum wage she should have been paid, liquidated damages, attorneys' fees, and costs.

## FIFTH CLAIM FOR RELIEF

### New York State Minimum Wage Violation

(N.Y. Lab. L. §§ 190 *et seq.* and 650 *et seq.*)

126. Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

127. At all times relevant to this action, Plaintiffs were employed by Defendants within the meaning of New York Labor Law §§ 2 and 651.

128. At all times relevant to this action, Defendants were employers within the meaning of the New York Labor Law.

129. In all periods of each Plaintiff's employment, Defendants willfully failed to pay each Plaintiff the proper minimum wage, as required by New York state law. N.Y. Lab. L. § 650 et seq.

130. Defendants knowingly, deliberately, and voluntarily disregarded their obligation to pay state minimum wages.

131. Pursuant to New York Labor Law § 663, an employer who willfully fails to pay wages and overtime required by the Minimum Wage Act, shall be liable, in addition to the amount of any under-payments, for liquidated damages equal to twenty-five percent of the total of such under-payments found due to the employee.

132. Each Plaintiff is entitled to an award of damages for unpaid minimum wages in an amount equal to the proper state minimum wage she should have been paid, liquidated damages, attorneys' fees, and costs.

## SIXTH CLAIM FOR RELIEF

### Federal Labor Standards Act (FLSA) Overtime Violation

(29 U.S.C. § 201, *et seq.*)

133. Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

134. Because Plaintiffs were employed as domestic workers at times relevant to this action, Plaintiffs were engaged in commerce within the meaning of the FLSA, 29 U.S.C. § 202(a).

135. Section 7(a) of the FLSA, 29 U.S.C. § 207(a), provides that no employer engaged in commerce shall employ an employee for a work week longer than forty (40) hours unless such employee receives compensation for her employment in excess of forty (40) hours at a rate not less than one and one-half times the regular rate at which she is employed.

136. Section 16 of the FLSA, 29 U.S.C. § 216(b), provides that any employer who violates the provisions of 29 U.S.C. § 207 shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages.

137. In all periods of each Plaintiff's employment, Defendants failed to pay the required overtime premiums in violation of 29 U.S.C. § 207.

138. Defendants' willful and intentional failure to pay each Plaintiff overtime pay violates 29 U.S.C. § 201, et seq. and U.S. Department of Labor regulations.

139. Defendants did not act in good faith when they failed to comply with federal overtime pay requirements.

140.    Each Plaintiff is entitled to an award of damages for unpaid overtime pay in amounts equal to the proper federal minimum wage she should have been paid, liquidated damages, attorneys' fees, and costs.

### SEVENTH CLAIM FOR RELIEF

### New York State Overtime Violation

(N.Y. Lab. L. §§ 190 et seq. and 650 et seq., 12 N.Y.C.R.R. § 142-2.2)

141.    Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

142.    In all periods of each Plaintiff's employment, Defendants willfully failed to pay each Plaintiff overtime premiums for her work in excess of forty (40) hours per week.

143.    Defendants' knowing and deliberate failure to pay each Plaintiff overtime premiums for work over forty (40) hours per week violates New York Labor Law §§ 190 et seq. and 650 et seq. and New York Department of Labor regulations, 12 N.Y.C.R.R. § 142-2.2.

144.    Pursuant to New York Labor Law §§ 198, 663, and 12 N.Y.C.R.R. § 142-2.2, an employer who willfully fails to pay wages and overtime required by the New York Labor Law and supporting regulations shall be liable, in addition to the amount of any under-payments, for liquidated damages equal to twenty-five percent of the total of such under-payments found due to the employee.

145.    Each Plaintiff is entitled to an award of damages for overtime pay for work over forty (40) hours per week in an amount equal to the proper overtime premiums she should have been paid, liquidated damages, attorneys' fees, and costs.

## EIGHTH CLAIM FOR RELIEF

### New York State Spread Of Hours Violation

(N.Y. Lab. L. §§ 190 et seq. and 650 et seq. and 12 N.Y.C.R.R. § 142-2.4)

146.   Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

147.   Defendants willfully failed to pay each Plaintiff an extra hour's pay for every day that she worked in which the interval between her start and end time exceeded ten hours, in violation of N.Y. Lab. L. §§ 190 et seq. and 650 et seq. and New York State Department of Labor regulations, 12 N.Y.C.R.R. § 142-2.4.

148.   Each Plaintiff is entitled to an award of an extra hour's pay for every day that each Plaintiff worked in excess of ten hours in an amount pursuant to N.Y. Lab. L. §§ 190 et seq. and 650 et seq. and New York State Department of Labor regulations, 12 N.Y.C.R.R. § 142-2.4, liquidated damages, attorneys' fees, and costs.

## NINTH CLAIM FOR RELIEF

### New York State Unpaid Wages

(N.Y. Lab. L. §§ 190 et seq.)

149.   Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

150.   The New York Labor Law requires employers to pay promised wages for every hour worked.  N.Y. Lab. L. §§ 190, et seq.

151.   Defendants failed to pay Plaintiffs any wages at all for every hour worked in at least the last six months of Plaintiffs' employment.

152.   Defendants' failure to pay Plaintiffs their promised wages for every hour worked in at least the last six months of their employment was willful and/or not in good faith.

21

153. Plaintiffs are entitled to their promised wages for every hour worked in at least the last six months of their employment, liquidated damages, attorneys' fees and costs pursuant to N.Y. Lab. L. §§ 190 et seq. and New York State Department of Labor regulations.

## TENTH CLAIM FOR RELIEF

### Fraud in the Execution, Unconscionability

154. Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

155. Ms. Kumari lacked knowledge of the character or essential terms of the contract and the release Defendants purportedly entered with Ms. Kumari, and did not have reasonable opportunity to know the character or essential terms of the contract or the release. The contract and the release are void ab initio.

156. The contract and release are also unenforceable because their terms are violative of New York labor law and public policy.

157. The contract is also unenforceable against Ms. Kumari because Defendants materially breached the terms of the contract.

158. The release is unenforceable against Ms. Kumari because Defendants did not provide any consideration for the release.

159. Plaintiffs are entitled to a declaratory judgment stating that the contract and release are void or voidable or unenforceable.

## ELEVENTH CLAIM FOR RELIEF

### Unjust Enrichment

160. Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

161. Plaintiffs rendered services as cooks, housekeepers, on-call servants, gardeners, landscapers, massage therapists, caterers, outside cleaning services, clerical assistants, inter alia, in good faith and with the expectation that they would be fairly compensated for such services.

162. The Defendants accepted those services and in turn failed to compensate Plaintiffs for the reasonable and/or fair market value of their services.

163. Defendants have been unjustly enriched at Plaintiffs' expense.

164. Defendants consciously or recklessly disregarded the rights of Plaintiffs.

165. Equity and good conscience require restitution to Plaintiffs for the reasonable value of these services.

166. Plaintiffs are entitled to recover damages in an amount to be proven at trial.

### TWELTH CLAIM FOR RELIEF

### Quantum Meruit

167. Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

168. Plaintiffs rendered services as cooks, housekeepers, on-call servants, gardeners, landscapers, massage therapists, caterers, outside cleaning services, clerical assistants, inter alia, in good faith and with the expectation that they would be fairly compensated for such services.

169. The Defendants accepted those services and in turn failed to compensate Plaintiffs for the reasonable and/or fair market value of their services.

170. The Defendants have benefited from these services at Plaintiffs' expense.

171. Defendants consciously or recklessly disregarded the rights of Plaintiffs.

172. Plaintiffs are entitled to recover damages in an amount to be proven at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, based on the allegations set forth above and/or additional facts that will be revealed through discovery Plaintiffs respectfully request that a judgment be granted as follows:

173.   Awarding Plaintiffs unpaid wages, including minimum wages and overtime pay, plus liquidated damages, interest, and attorneys' fees and costs, pursuant to 29 U.S.C. § 201 *et seq.*;

174.   Awarding Plaintiffs unpaid wages, including minimum wages, overtime pay, and spread-of-hours pay, plus liquidated damages, interest, attorneys' fees and costs, pursuant to New York Labor Law § 190, *et seq.*;

175.   Awarding Plaintiffs punitive and compensatory damages for pain and suffering, the reasonable and/or fair market value of services provided to Defendants, and such other relief as the Court may deem just and proper pursuant to the Thirteenth Amendment of the U.S. Constitution and its incorporating statute, 18 U.S.C. § 1584, and the Trafficking Victims Protection Reauthorization Act, 18 U.S.C. § 1595;

176.   Awarding Plaintiffs attorneys' fees and costs;

177.   Awarding Plaintiffs pre-judgment interest and post-judgment interest as allowed by law;

178.   Awarding Plaintiffs the reasonable and/or fair market value of services provided to Defendants in good faith pursuant to state law;

179.   Awarding Plaintiffs a declaration pursuant to 28 U.S.C. § 2201 that the contract and release purportedly provided by Defendants to Ms. Kumari is void ab initio or voidable or unenforceable; and

180.   Awarding Plaintiffs such other legal and equitable relief as the Court may deem just

and proper.

Dated:  New York, New York
        May 16, 2011

                                    Respectfully submitted,
                                    THE LEGAL AID SOCIETY


                         By:        _____
                                    Steven R. Banks, Attorney in Charge
                                    Adriene L. Holder, Attorney in Charge,
                                    Civil Practice
                                    Karen Cacace, Supervising Attorney
                                    Amy M. Hong, of counsel
                                    Hollis V. Pfitsch, of counsel
                                    Employment Law Project
                                    199 Water Street, 3rd Floor
                                    New York, New York 10038
                                    (212) 577-3626 (phone)
                                    (KCacace@legal-aid.org)
                                    (AMHong@legal-aid.org)
                                    (HVPfitsch@legal-aid.org)

                                    CLEARY GOTTLIEB STEEN & HAMILTON
                                    LLP


                         By:        _____
                                    Thomas J. Moloney, Partner
                                    Justin N. Outling, of counsel
                                    Nefertiti J. Alexander, of counsel
                                    Jamie R. Galvin, of counsel
                                    1 Liberty Plaza
                                    New York, New York 10006
                                    (212) 225-2000 (phone)

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

MONICA AKKA and LEELA KUMARI,

Plaintiffs,

v.

DHANBIR SALUJA, HARJIT "POTEE" SALUJA, and
MOHINI SINGH,

Defendants.

## COMPLAINT

CLEARY GOTTLIEB STEEN & HAMILTON LLP
ATTORNEYS FOR MONICA AKKA AND LEELA KUMARI

ONE LIBERTY PLAZA
BOROUGH OF MANHATTAN
NEW YORK, N.Y. 10006
(212) 225-2000

COPY RECEIVED

THIS _____ DAY OF _____ 20 ___